VINCENT RENDA et al., Respondents, v JOHN P. FRAZER et al., Appellants.

Fourth Department, July 10, 1980

APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle (William Eggers* of counsel), for appellants.

*Sullivan, Gough, Skipworth, Summers & Smith (William V. Gough* of counsel), for respondents.

## OPINION OF THE COURT

SCHNEPP, J.

We are called upon to determine whether a physician may be equitably estopped from asserting the Statute of Limitations as a bar to a medical malpractice action absent an affirmative claim that the patient was induced by fraud, misrepresentation or deception to refrain from filing a timely action.

On March 14, 1973 Dr. John P. Frazer performed ear surgery on plaintiff Yolanda Renda at Strong Memorial Hospital during which he severed her seventh facial nerve. After the operation, Ms. Renda's face was partially paralyzed; she was unable to move the muscles on the right side of her face, including the right side of her mouth and nose and her right eyelid and eyebrow. This condition improved somewhat over time, but has resulted in a permanent disfigurement.

Plaintiffs, Yolanda and Vincent Renda, brought this action in July, 1978 alleging that defendants, Dr. Frazer and the Strong Memorial Hospital, failed to follow accepted medical standards while performing a mastoidectomy and tympanoplasty. Plaintiffs' complaint also contains a cause of action alleging lack of an informed consent. Following the completion of the examinations before trial of Dr. Frazer and Ms. Renda, defendants moved for summary judgment, claiming that the action was time-barred by the Statute of Limitations.[1] They appeal from an order denying their motion.

Special Term correctly ruled that the doctrine of "continu-

---

1. The two-year and six-month Statute of Limitations contained in CPLR 214-a applies to acts of medical malpractice occurring on or after July 1, 1975. The three-year Statute of Limitations contained in CPLR 214 applies to causes of action for medical malpractice based upon acts occurring before July 1, 1975.

ous treatment" tolled the Statute of Limitations as to the defendant Strong Memorial Hospital but, because of Dr. Frazer's intermittent treatment of Ms. Renda, the doctrine did not toll the Statute of Limitations as to him *(Renda v Frazer,* 100 Misc 2d 511, 515; see *Charalambakis v City of New York,* 46 NY2d 785; *Davis v City of New York,* 38 NY2d 257; *Borgia v City of New York,* 12 NY2d 151; see, generally, 1 NY PJI2d 115 [Supp]). Special Term further held, however, that the doctrine of equitable estoppel precluded Dr. Frazer from raising the Statute of Limitations as a defense (100 Misc 2d 511, 519). Although we concur with the result reached by Special Term, we disagree with its application of the doctrine of equitable estoppel.

Plaintiff Yolanda Renda states in her affidavit submitted on this motion that Dr. Frazer told her after the operation that he had severed a facial nerve, following which he implanted a nerve graft. She claims that Dr. Frazer told her that the nerve graft "would start to grow after six months and then take anywhere from two years to five years to grow back together and take", and that when she asked whether her face would be normal, he replied that "everything would be all right". She further claims that during a medical examination on October 23, 1973 she asked Dr. Frazer how long she would continue to suffer her facial condition and he responded "that it would take a long time for the graft to heal and that she should be patient". During the years between 1973 and 1977, Ms. Renda inquired on several occasions of Dr. Ralph F. Jacox, an employee of Strong Memorial Hospital who treated her for an unrelated condition, in regard to the progress of the nerve graft. Dr. Jacox and Dr. Richard Satran, a neurologist to whom Dr. Jacox referred Ms. Renda for her facial nerve condition, informed her, in essence, that healing would take time, that she should be patient and finally that no further treatments were recommended. She again visited Dr. Frazer on August 30, 1977 for the first time since October, 1973, and he then told her that her condition was permanent. Ms. Renda alleges that "[s]he waited" before bringing a malpractice action against Dr. Frazer "because of the statements made to her by Dr. Frazer and other physicians on the staff of the Strong Memorial Hospital that the nerve would grow back and she would have normal use of her face".

Generally, a defendant physician may be estopped from asserting "the Statute of Limitations where plaintiff was

induced by fraud, misrepresentations or deception to refrain from filing a timely action" *(Simcuski v Saeli,* 44 NY2d 442, 448-449). However, application of the doctrine of equitable estoppel will be rejected if plaintiff neither pleads, alleges nor presents evidentiary facts supporting a claim of fraud or fraudulent concealment *(Florio v Cook,* 48 NY2d 792; *Immediate v St. John's Queens Hosp.,* 48 NY2d 671; see, also, *Simcuski v Saeli, supra;* see, generally, Farrell, Civil Practice, 1978 Survey of New York Law, 30 Syracuse L Rev 385, 406-409).

Special Term, after concluding (100 Misc 2d 511, 517, *supra)* that "[t]he doctrine of equitable estoppel applies if the representations or conduct of a defendant mislead the plaintiff, even innocently", held that "where [a] doctor's opinion, given in the course of treatment, is incorrect and the patient relies upon it to his detriment, as here, then such mistaken opinion, albeit innocent, properly falls within that category of misrepresentation which the law requires for the application of equitable estoppel. At the very least * * * it is a jury question precluding the granting of summary judgment" (100 Misc 2d 511, 519, *supra).* This is an incorrect statement of the law. In medical malpractice cases, a doctor's prognosis, made in good faith and innocent of any intent to mislead or defraud will not supply the basis of a claim of equitable estoppel. It may well be that in the context of settlement negotiations an intent to defraud or mislead is not a prerequisite for a claim of equitable estoppel (see, e.g., *Dupuis v Van Natten,* 61 AD2d 293, 295; *Robinson v City of New York,* 24 AD2d 260, 263), but these cases do not involve professional medical opinions. The Court of Appeals specifically held in *Simcuski v Saeli* (44 NY2d 442, 454, *supra):* "With respect to the application of the doctrine of equitable estoppel to a defense of Statute of Limitations pleaded *in a malpractice action* * * * we are concerned with an intentional, not merely negligent, wrong—the purposeful concealment and misrepresentation of the fact and consequences of the malpractice" (emphasis supplied). To hold that an innocent mistake in medical opinion may constitute misrepresentation may open the "proverbial floodgates" to claims of equitable estoppel in medical malpractice cases.

In their complaint and affidavit submitted in response to defendants' summary judgment motion, plaintiffs do not allege that Dr. Frazer fraudulently misled them from timely instituting an action for malpractice (cf. *Simcuski v Saeli, supra).*

However, evidentiary facts supporting a claim of "the purposeful concealment and misrepresentation of the * * * consequences of the malpractice" *(Simcuski v Saeli, supra,* p 454) appear in the record *(Immediate v St. John's Queens Hosp., supra,* p 673). At the examination before trial, Dr. Frazer gave the following answers to the plaintiffs' attorney's questions:

"Q. Didn't [Ms. Renda] ask you how long it would be before [the nerve graft] reached maximum improvement or before it got better, or something of that sort?

"A. I have no note of it.

"Q. Would you tell a patient something about how long it is going to take for you to get well?

"A. I told her originally it would take six months before it would even begin to show.

"Q. Did you tell her it would be two to five years before it would get well?

"A. No, maybe not, because you don't know.

"A. Could it take two to five years?

"A. It could. It could take two. I would say after that, you would probably begin to reach the point of maximum benefit."

An "Operative Note" dated March 14, 1973 signed by Dr. Frazer states that "[t]he prognosis for resuming facial function[2] [for Ms. Renda] would be favorable". Dr. Frazer was also asked questions pertaining to Ms. Renda's resumption of facial function:

"Q. When you say the prognosis for resuming facial function, would you define that term for me?

"A. Facial function is moving on the face, isn't it?

"Q. I don't know. I am asking you.

"A. Facial function is—

"Q. Does that mean she would be able to move the sides of her mouth, right side of her mouth?

"A. You can never get a facial graft that would give you a normal face. You can't play God.

"Q. I am not trying *to* be argumentative.

---

2. At the examination before trial Dr. Frazer defined the word "function" as meaning "moving" or "use". He described Ms. Renda's condition as "a lack of complete function". He distinguished her condition from "paralysis" which he described as "something that does not move at all".

"Doctor, you state the prognosis for resuming facial function would be favorable?

"A. Favorable.

"Q. I would like to know what you define facial function as. I believe you said movement?

"A. Right.

"Q. My next question, does that include movement of the lips? Yes or no.

"A. I don't think I can answer that yes or no.

"Q. Does it include movement of the cheek?

"A. Again, I can't answer that yes or no.

"Q. Does it mean movement of the right eyelid to a closed position?

"A. Again, I can't answer that yes or no. You can't predict—".

Although Dr. Frazer admitted that "[y]ou can never get a facial graft that would give you a normal face", he allegedly told Ms. Renda that "everything would be all right". He never told her that the nerve graft would never give her back a normal face. Thus, a question of fact exists as to whether Dr. Frazer intentionally deceived Ms. Renda by his prognosis which seems to be at variance with his professional experience. If a trier of fact found that Dr. Frazer told Ms. Renda that she would recover and implied that her face would be normal, while he knew that no facial (nerve) graft would result in a normal face, then it could find that he intentionally misrepresented the prospects of recovery and deceived her[3] thus triggering the doctrine of equitable estoppel *(Simcuski v Saeli,* 44 NY2d 442, *supra).*

"[W]here there is any doubt as to the existence of a triable issue" summary judgment should not be granted *(Rotuba Extruders v Ceppos,* 46 NY2d .223, 231, citing *Moskowitz v Garlock,* 23 AD2d 943, 944; see *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; see, also, *Zuckerman v City of New York,* 49 NY2d 557). When reviewing a motion for summary judgment, the focus of the court's concern is issue finding, not issue determination. In the instant case, reviewing

---

**3.** It is not necessary for the trier of fact to find that Dr. Frazer specifically intended to delay Ms. Renda's institution of a medical malpractice action, only that he intentionally misrepresented the fact or consequences of the malpractice *(Simcuski v Saeli, supra).* Thus, it would be immaterial, if Dr. Frazer did intentionally misrepresent the consequences of the alleged malpractice, that he did so for altruistic reasons.

the record in the light most favorable to plaintiffs, there exists a bona fide issue raised by evidentiary facts as to whether Dr. Frazer deceived or misled plaintiffs by misrepresenting the possibility of a full recovery.

Although plaintiffs proffering this type of claim should plead affirmatively any fraud or misrepresentation on which to base their claim of equitable estoppel, the presence of facts in the record evincing fraud or misrepresentation will preclude the granting of summary judgment (cf. *Alvord & Swift v Muller Constr. Co.*, 46 NY2d 276, 280; see, also, *Immediate v St. John's Queens Hosp.*, 48 NY2d 671, *supra*).

Accordingly, the order of Special Term should be affirmed for the reasons stated herein.

SIMONS, J. P., HANCOCK, JR., DOERR and MOULE, JJ., concur.

Order unanimously affirmed, with costs.