OPINION OF THE COURT
Wallace R. Cotton, J.
Defendants’ motion for summary judgment dismissing the plaintiff’s complaint is denied without prejudice with leave to renew upon the trial of the instant action after the close of the plaintiff’s case.
While walking across the service road at J.F.K. International Airport on February 6, 1981, the plaintiff was injured in a vehicular accident when he was struck and knocked to the ground by a truck owned by the defendant, Pan American World Airways, Inc., and operated by its employee, the codefendant, James Engrassia. According to the defendants, “[t]he truck’s left directional signal lamp, which is mounted on the side of the truck body, came into contact with the left side of plaintiff’s head and face”.
The plaintiff subsequently commenced the instant negligence action to recover damages for multiple personal injuries, including facial scarring, which he sustained in the airport accident. The defendants move for summary *187 judgment to dismiss the plaintiff’s complaint based upon their contention that his action is barred by subdivision 1 of section 673 of the Insurance Law because he did not sustain a “serious injury” as defined and set forth in subdivision 4 of section 671 of the Insurance Law.
Subdivision 1 of section 673 recites that “[notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this State, there shall be no right of recovery for non-economic loss [i.e., pain and suffering], except in the case of a serious injury”. Subdivision 4 of section 671 of the Insurance Law defines a “serious injury” to encompass “a personal injury which results in * * * significant disfigurement”.
The accident caused the plaintiff to suffer lacerations of the face which eventually resulted in the formation of three scars. The plaintiff claims that these scars constitute a “significant disfigurement” which thereby entitles him to maintain the present action against the defendants pursuant to subdivision 1 of section 673. Thus, the issue for the court to decide is whether the medical evidence submitted by the plaintiff (as well as the defendants), is sufficient to raise a genuine triable issue of fact in reference to the plaintiff’s claim of a “significant disfigurement”.
Before reviewing the medical evidence presented by the parties in the case at bar, it should be observed that “[b]ecause summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue (Rotuba Extruders v Ceppos, 46 NY2d 223, 231; Renda v Frazer, 75 AD2d 490). When reviewing a motion for summary judgment the focus of the court’s concern is issue finding, not issue determination, and the affidavits should be scrutinized carefully in the light most favorable to the party opposing the motion (see Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404; Renda v Frazer, supra)” (Goldstein v County of Monroe, 77 AD2d 232, 236; Smith v Hooker Chems. & Plastics Corp., 89 AD2d 361, 363; Riedman Agency v Meaott Constr. Corp., 90 AD2d 963, 964, quoting Palmerton v Envirogas, Inc., 80 AD2d 996, 997). “The court will accept as true on a *188 summary judgment motion the opposing party’s evidence and any evidence of the movant which favors the opposing party. Weiss v. Garfield, 21 A.D.2d 156” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:17, pp 437-438).
The affidavit of the plaintiff’s medical expert, Dr. Reed, reveals as follows:
The plaintiff has been left with three facial scars as a result of the accident.
“The first laceration has resulted in a two (2) centimeter curvilinear slightly depressed scar of the left dome of the nose. This scar is mildly red and in good alignment.
“The second scar of the left lateral brow area measures one and a half (1 Vz) centimeters and is curvilinear, slightly red, irregular and healed.
“The third scar is of the right cheek in the malar area. This is a one (1) centimeter transverse scar which is regular in appearance, normally pigmented and has good alignment”.
Dr. Reed concludes by stating, “the above described scars represent permanent scars that will not benefit from reconstructive surgery”.
The defendants had the plaintiff examined on July 13, 1982 by a physician in their behalf, Paul R. Weiss, M.D. In his report, Dr. Weiss agrees with the plaintiff’s physician that the plaintiff’s three facial scars are permanent in nature and not amenable to corrective surgery. Significantly, his measurement of the plaintiff’s nasal scar, four centimeters, is two centimeters longer than the earlier measurement reported by the plaintiff’s physician. In reference to this scar, the court notes that the plaintiff’s medical records indicate that a total of 17 sutures (13 on the left, 4 on the right) were used to close the laceration of the nose which extended from the left to the right side of the nose. The defendant’s doctor goes on to further state in his report that the scar crosses the nasal tip and contains a traumatic tattoo. Although the defendant’s doctor opines that the plaintiff’s scars are well healed, he nevertheless admits to a slight depigmentation in all three. .
*189 Do the plaintiff’s three facial scars constitute a “significant disfigurement” under the No-Fault Law? The court cannot look to any guidance in the “no-fault” statute to answer this question because, unfortunately, the Legislature did not define the phrase “significant disfigurement” when it enacted the statute (see Schwartz, No-Fault Insurance: Litigation of Threshold Questions Under the New York Statute — The Neglected Procedural Dimension, 41 Brooklyn L Rev 37, 44).
Although no New York case has discussed or defined the meaning of a “significant disfiguring” injury in connection with a no-fault case, the word disfigurement is used in our State’s Workers’ Compensation Law (§ 15, subd 3, par t, cl 1) wherein it is provided that the “board may award proper and equitable compensation for serious facial or head disfigurement”. As used in the context of a claim for workers’ compensation benefits, the term “disfigurement” has been defined as “ ‘ “that which impairs or injures the beauty, symmetry, or appearance of a person * * * that which renders unsightly, misshapen, or imperfect, or deforms in some manner” ’ ” (Mitchum v Inman Mills, 209 SC 307, 309; accord Arkin v Industrial Comm. of Col., 145 Col 463; Bowen v Chiquola Mfg. Co., 238 SC 322; Dombrowski v Fafnir Bearing Co., 148 Conn 87).
While the words, “significant disfigurement”, are abstract, “ ‘they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept’. (Kovacs v Cooper, 336 US 77, 79.)” (Montgomery v Daniels, 38 NY2d 41, 58.) Thus, refining the case law definition of the word “disfigurement” as used in the workers’ compensation cases, cited supra, “[a]n injury is disfiguring [under the No-Fault Law] if it alters for the worse the plaintiff’s natural appearance. A disfigurement is significant if a reasonable person viewing the plaintiff’s * * * [face] in its altered state would regard the condition as unattractive, objectionable, or as the subject of pity or scorn” (PJI 2:88B [Supp], p 93).
Based upon all the medical evidence submitted, especially the defendants’ medical report, the plaintiff has sustained his burden in demonstrating that a triable issue of fact exists in reference to his contention that his facial *190 scars are “significantly disfiguring” under subdivision 4 of section 671 of the Insurance Law (cf. Cohen v Lizza, 63 AD2d 557). Although the movants’ physician characterizes each of the plaintiff’s three scars as minor, he does acknowledge that they cannot be corrected through plastic surgery. Moreover, assuming, but without deciding, that each individual scar is minor in nature, this court is not convinced that three minor scars which appear on the face cannot, collectively, constitute a “significant disfigurement”. The nasal scar alone, which required 17 sutures to close, is four centimeters in length. The defendants’ physician took color pictures of the plaintiff’s face when he examined him almost a year and a half after the accident. However, the defendants neglected to offer them in support of the instant motion.
The defendants’ reliance on the recently decided Court of Appeals case of Licari v Elliott (57 NY2d 230) in support of their motion for summary judgment to dismiss the plaintiff’s complaint is misplaced. In the Licari case (supra), the trial court considered the question of whether the plaintiff sustained a “serious injury” to be a factual one and, accordingly, submitted it to the jury.. On appeal, the Appellate Division reversed and dismissed the plaintiff’s complaint, holding that the plaintiff had failed, as a matter of law, to prove a serious injury under subdivision 4 of section 671 of the Insurance Law. The Court of Appeals sustained the Appellate Division’s ruling. It rejected the plaintiff’s argu: ment that the threshold issue (i.e., “serious injury”) is always a fact question for jury determination, and decided that by enacting “no-fault” legislation,
“the Legislature * * * intended that the court first determine whether or not a prima facie case of serious injury has been established * * *
“It is incumbent upon the court to decide in the first instance whether plaintiff has a cause of action to assert within the meaning of the statute * * * If it can be said, as a matter of law, that plaintiff suffered no serious injury within the meaning of subdivision 4 of section 671 of the Insurance Law, then plaintiff has no claim to assert and there is nothing for the jury to decide” (Licari v Elliott, supra, pp 237-238). *191 However, the movants have overlooked a very critical, important procedural distinction between the posture of the Licari case when it was reviewed by the Court of Appeals and the one at bar. In the former case, which proceeded to trial, the plaintiff had the opportunity to testify and present medical evidence before the trial court, whereas the instant action is being considered for disposition via summary judgment, determined on the submission of papers alone. Here, on a motion for summary judgment, the sole issue involved is issue finding, and not issue determination. The Licari decision did not purport to alter and rewrite this often-quoted fundamental rule which is the key to the resolution of a motion for summary judgment. Licari merely requires the trial court to assess the evidence adduced during trial and “determine whether a plaintiff has made a threshold case of‘serious injury’ which can support a lawsuit for ‘noneconomic loss’ ” (Slaughter v Flores, NYLJ, Jan. 13, 1983, p 7, col 4 [App Term, 1st Dept]). Thus, Licari v Elliott (supra) is clearly distinguishable from the case at bar.
When a court grants a motion for summary judgment, it is the procedural equivalent of the direction of a verdict (Gerard v Inglese, 11 AD2d 381; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067; Mack v Arnold Gregory Mem. Hosp., 90 AD2d 969; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:5, p 427). By denying the movants’ motion for summary judgment at this juncture in the proceedings, the court has only determined that the submitted medical evidence does not warrant the direction of a verdict in favor of the movants on the issue of “serious injury threshold”.
The denial of the movants’ motion is without prejudice. Thus, upon the trial of the action, the movants may renew their motion after the close of the plaintiff’s case. Then, after the trial court has had an opportunity to directly observe the plaintiff’s facial scars and to evaluate the medical testimony, a proper judicial determination can be made in accordance with the holding of the Licari case (supra) as to whether or not the plaintiff’s case should be submitted to the jury. *192 Having decided that there is a bona fide factual dispute as to whether the plaintiff sustained the statutorily required “serious injury” to prosecute the action, and that the resolution of this issue should take place in a plenary trial, it should be noted that one lower court adopted a different approach by directing an immediate trial of the “serious-injury threshold” issue pursuant to CPLR 3212 (subd [c]) (Sullivan v Darling, 81 Misc 2d 817). The movants do not request this relief; however, it is worth discussing because in the words of one leading commentator on New York civil practice, “[mjatters of this nature are so fundamental, important and far reaching that they deserve legislative consideration and perhaps the initiation of steps for constitutional amendment. Many different procedures are possible and the nisi prius judges should have firmer guideposts than have been offered so far” (Siegel, 1975 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C321L47, 1982-1983 Pocket Part, p 17).
In the case of Sullivan v Darling (81 Misc 2d 817, supra) the defendant moved for summary judgment claiming that the plaintiff’s scar did not constitute a significant disfigurement under the No-Fault Law. The court held that there was a genuine issue of fact present to defeat the motion. However, the court directed an immediate trial of the issue pursuant to CPLR 3212 (subd [c]). The court reasoned that an immediate “trial of the threshold issues, even by a court and jury, would prove to be more expeditious than a plenary trial, since the jury would not be called upon to pass on issues of liability or contribution. And, a resolution of such threshold issues * * * would tend to expedite the disposition of the controversy, either by an immediate dismissal, or by promoting settlement or simplifying the issues to be resolved at the plenary trial through clarification of the standards which are to govern any recovery” (81 Misc 2d, at p 820). The Sullivan court also thought that it was important to order an immediate trial of the “serious injury” issue because it would discourage the commencement of frivolous no-fault litigation, reduce calendar congestion and automobile insurance rates.
*193 However, in the case of Snyder v Laffer (81 Misc 2d 814), Justice Harnett declined to order an immediate trial limited to the threshold question and, instead, held that the issue must await determination at the main trial. He was of the opinion that a separate trial “would be costly and time consuming to the court and the litigants. If the plaintiffs prevailed at this stage and were to continue with this lawsuit, much of the evidence presented at a preliminary trial would only be repeated again at the trial in chief. By duplicating effort, a preliminary trial would violate the raison d’etre of the ‘no fault’ law. This law was intended to reduce, not increase, the volume of automobile negligence litigation” (81 Misc 2d, at p 816).
The Appellate Division, Third Department, was aware of both the Snyder (supra) and Sullivan (supra) decisions when it decided the case of Sanders v Rickard (51 AD2d 260). The Appellate Division held that where the defendant moves for summary judgment maintaining that the plaintiff did not sustain a “serious injury” as defined in subdivision 4 of section 671 of the Insurance Law, and “the defense is not established to a sufficient degree to warrant the court as a matter of law to direct judgment in favor of defendant under CPLR 3212 (subd [b]) [as in the case at bar] the resolution of any question of fact as to whether plaintiff has suffered a ‘serious injury’ * * * should await the trial” (Sanders v Rickard, supra, p 263).
The Appellate Division in Sanders v Rickard (supra), rejected the idea of an immediate trial of the threshold issue, advocated in Sullivan v Darling (supra) and expressly embraced the reasoning of Justice Harnett in Snyder v Laffer (supra), denying same. The procedure which directs the trial of the “serious injury threshold” in a plenary action is the preferable one. The approach used in Sullivan (supra) has the disadvantage of necessitating two trials if the case at the first trial is found to pass the “no-fault threshold”. The resulting fragmentation increases litigation by requiring two separate trials instead of one and, therefore, it is to be avoided. Moreover, in view of the decision of Licari v Elliott (supra) which requires the court to decide in the first instance whether the plaintiff sustained a “serious injury” within the meaning of the No- *194 Fault Law, any possible advantage from an immediate separate trial of the issue has been rendered questionable.
In response to the movants’ motion for summary judgment, the plaintiff requests the court to “search the record” and award him summary judgment on the issue of the defendants’ liability (Wehringer v Helmsley-Spear, Inc., 91 AD2d 585; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:23, p 443). Summary judgment is rarely granted in negligence cases (McDougal v County of Livingston, 89 AD2d 815; Johannsdottir v Kohn, 90 AD2d 842). Suffice it to say that the record before the court does not indicate that the movants’ conduct fell far below any permissible standard of due care (Ugarriza v Schmieder, 46 NY2d 471). Accordingly, plaintiff’s request for summary judgment is also denied.