OPINION OF THE COURT
Eve Preminger, J.
Defendants move for summary judgment dismissing the complaint as barred by the Statute of Limitations and for failure to state a cause of action.
For the purposes of this motion, which in essence seeks dismissal on CPLR 3211 (a) grounds, the court will assume the truth of the allegations in the complaint.
In 1974 plaintiff began to suffer from headaches and occasional seizures. His treating doctor, defendant Culleton, suspected a brain tumor and called in defendant McMurtry, a prominent neurosurgeon, for a consultation. Defendants agreed that Dr. McMurtry would perform a craniotomy to determine the location and type of plaintiff’s tumor, which in turn would determine the appropriate treatment.
A craniotomy involves the creation of a hole, or window, into the brain by means of a bone flap, which enables the surgeon to view those portions of the brain that become exposed. Plaintiff alleges that in performing the craniotomy Dr. McMurtry placed the bone flap in the wrong location, which prevented him from noting the actual cause of plaintiff’s seizures, a benign tumor (meningioma) in the tentorium section of the brain. Because no tumor was visible from the window he had formed, Dr. McMurtry erroneously concluded that plaintiff had a deep-seated malignant tumor (glioma) which could not be viewed or excised. He closed the bone flap without taking further action, and informed plaintiff that he had six months to live.
The subsequent treatment of plaintiff was not productive of improvement. The defendant doctors commenced an intensive course of radiation and chemotherapy for the glioma plaintiff did not have, and failed to excise or otherwise treat the meningioma they did not see. Plaintiff’s condition soon deteriorated from both the unnecessary radiation and the failure to remove the meningioma.
Plaintiff contends that during these years of improper treatment defendants received brain scans which demonstrated the existence and location of plaintiff’s meningioma. He was never informed by either defendant of the existence of the meningi *658 oma or that the original diagnosis was incorrect. In answer to his complaints plaintiff was told that he was doing well and was lucky to be alive. Plaintiff alleges that this failure to inform him as to his true condition was part of a fraudulent scheme by the defendants which was intended to cover up their malpractice and protect Dr. McMurtry’s standing and reputation in the medical community.
Plaintiff’s last visit with Dr. McMurtry was in December 1981. He last saw Dr. Culleton in October 1982, when Dr. Culleton retired. It is not clear in the record whether Dr. McMurtry supervised or participated in plaintiff’s treatment between 1982 and 1984. However, by lettér dated November 28, 1983 Dr. Klass (the physician who took over the care of Dr. Culleton’s patients) wrote to Dr. McMurtry about plaintiff’s most recent brain scan and its indication of a meningioma. Dr. Klass stated in that letter:
"A CAT scan that was performed on 11/15/83 showed an enhancing mass in the left temporoparietal region, most probably representing a meningioma. Copies of these films will be forwarded to you.
"At this point in time, I am not really sure what should be done. I will discuss this with you after you see the films.”
Plaintiff was not informed of the facts in this letter for over a year. In December of 1984 Dr. Klass informed plaintiff, for the first time, that his condition was not terminal, that the diagnosis by Drs. Culleton and McMurtry was incorrect, and that no biopsy had -ever been performed. Plaintiff sought legal counsel soon thereafter and this action was commenced by service upon defendant McMurtry (later ruled invalid) on March 25, 1985; defendant Culleton was served on June 19, 1985. Defendant McMurtry was re-served on May 9, 1988.
The complaint in this action served in March 1985 included a fraud cause of action against both defendants. Plaintiff nonetheless claims that he was unaware of the "precise nature of the fraud” until November 1985, when his attorney was informed by an examining neurologist that the bone flap had been incorrectly located, the years of radiation and chemotherapy had been unnecessary, that the benign tumor could and should have been removed in 1976 and, most significantly, that both defendants were "surely aware of their malpractice during the years they treated [plaintiff] and * * * must have intentionally misinformed [the plaintiff] in the hope of covering up their mistakes”. Plaintiff contends that *659 any applicable Statute of Limitations period should be computed from the date of this meeting with the neurologist, which was the first occasion he became aware of any intentional concealment.
Defendants contend that all of plaintiff’s causes of action in both malpractice and fraud are time barred or insufficient as against both doctors.
Defendant Culleton’s argument that the malpractice cause of action against him is time barred is without merit. Ordinarily the 2½-year Statute of Limitations on medical malpractice claims runs from the last date of treatment rendered by the defendant (Oct. 1982 as to Dr. Culleton). However, where, as in the instant case, it is alleged that the doctor has intentionally and deliberately concealed his malpractice from the patient, the Statute of Limitations is extended to "within a reasonable time after discovery of the malpractice”. (Simcuski v Saeli, 44 NY2d 442, 446 [1978]; see also, Renda v Frazer, 75 AD2d 490 [4th Dept 1980].) Dr. Culleton was served in June 1985, less than six months following Dr. Klass’ December 1984 revelations to plaintiff, which is the earliest that plaintiff could possibly be said to have discovered the alleged malpractice. This service was clearly within a reasonable period of time of discovery.
Dr. Culleton attacks the legal sufficiency, and not the timeliness, of the fraud claim against him, arguing that he did not directly participate in the fraud. Whether Dr. Culleton participated in the actual decision to prescribe radiation and other treatment for plaintiff is not relevant to the fraud cause of action. The gravamen of the fraud allegation is that Dr. Culleton participated in the intentional concealment of malpractice. Plaintiff has come forward on this motion with more than sufficient evidentiary proof in support of the fraud cause of action to entitle him to a trial on that claim.
The issues relating to the causes of action against Dr. McMurtry are more complex. With respect to the malpractice claim, the date of discovery of the concealment of the malpractice becomes crucial. If the earlier date of December 1984 is used to compute the time period, service on Dr. McMurtry was effected SVz years after the discovery of the alleged fraudulent concealment of the malpractice. While it is unclear whether the "reasonable time” contemplated by the Court of Appeals in Simcuski v Saeli (supra) is as long as the 2Vi-year limitation period, it seems obvious that it could not be considered reasonable to postpone suit beyond that statutory period.
*660 Thus, use of the earlier discovery date would bar the malpractice claim against defendant McMurtry. Plaintiff argues that this earlier date was merely the time when his suspicions were raised (see, Erbe v Lincoln Rochester Trust Co., 3 NY2d 321, 326 [1957]) and should be ignored in favor of the November 1985 date, when he learned additional facts which demonstrated concealment. Use of the latter date would bring the May 1988 service upon Dr. McMurtry barely within the statutory time period. Plaintiff urges that at the very least, a factual dispute exists as to the actual discovery date which would bar summary judgment.
The court concludes that under the undisputed facts December 1984 must be considered the date of discovery of the malpractice for the purpose of the Statute of Limitations. The fact that plaintiff was unaware for almost another year of some of the details of the malpractice is not relevant. (Sielcken-Schwarz v American Factors, 265 NY 239 [1934].) There can be no better proof that discovery of the malpractice occurred in December 1984 than the filing of a complaint in March 1985 which included a malpractice cause of action based on the facts discovered in December 1984. Indeed, the November 1985 meeting with the neurologist was so irrelevant to the discovery of malpractice that it did not even occasion the amendment of the original complaint, which remains the operative document in this action.
Accordingly, the first and second causes of action against defendant McMurtry, which sound in medical malpractice, are dismissed as time barred.
The remaining issue to be resolved is the viability of plaintiffs fraud claim against Dr. McMurtry.
With respect to fraud actions there are two separate relevant limitation periods. CPLR 213 (8) provides:
"The following actions must be commenced within six years * * *
"an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff of the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it.”
This section must be read in conjunction with CPLR 203 (f): "Time computed from actual or imputed discovery of facts. Except as provided in article 2 of the uniform commercial code or in section two hundred fourteen-a of this chapter, *661 where the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer.”
The coexistence of these two apparently contradictory statutes has been termed initially "baffling” by no less a legal scholar than Judge Henry J. Friendly. (See, IIT v Cornfeld, 619 F2d 909, 928 [2d Cir 1980].) In fact, the legislative history of CPLR 203 (f) reveals that the section is intended to shorten what was considered a "too liberal” limitation period allowed by CPLR 213 (8) in cases of actual fraud where the Statute of Limitations is tolled pending discovery of the fraud.* As Dean (now Judge) McLaughlin explained in his Practice Commentaries (McKinney’s Cons Laws of NY, Book 7B, CPLR C203:12, at 125-126): "The philosophy behind [CPLR 203 (f)] is simple: a plaintiff whose statute of limitations has been tolled until he discovers the cause of action, and who discovers the cause of action long after it has accrued, should not have the same length of time in which to sue as a plaintiff who discovers his cause of action promptly. Thus, the statute provides that, where a statute of limitations is tolled pending discovery, the plaintiff shall have his basic statute of limitations [i.e., six years] computed from the time the cause of action accrued or two years from discovery, whichever is longer.” (Emphasis added.)
It is thus clear that under CPLR 203 (f) the Statute of Limitations on plaintiff’s fraud cause of action against defendant McMurtry is two years from discovery of the fraud in December 1984, or six years from when the cause of action accrued, whichever is longer. Since Dr. McMurtry was not served until May 1988, 3Vi years following discovery of the fraud, plaintiff’s cause of action is timely only if Dr. McMurtry was served within six years of accrual.
The parties suggest differing dates for accrual of the fraud claim. Plaintiff argues that the fraud involved here is a continuing one which "persisted well beyond the last treatment of [plaintiff] by Dr. McMurtry and indeed, continued *662 past the last visit with Dr. Culleton.” Defendant McMurtry, on the other hand, contends that the alleged fraud was not continuous, and that the "last possible date” the fraud claim could have accrued was December 1981, the date of plaintiff’s last visit with Dr. McMurtry.
Neither side has correctly analyzed the nature of the alleged fraud or the differing legal duties under the law of fraud and malpractice.
The fraudulent concealment alleged against the defendants is neither identical nor coterminous with the alleged malpractice. Plaintiff alleges that at some point, not precisely defined in the pleadings or motion papers, defendants McMurtry and Culleton entered upon a scheme and course of conduct to conceal from plaintiff both his true condition and the fact of defendants’ prior malpractice. Presumably this scheme commenced at the point when the doctors first learned (through the CAT scans) of the existence of the meningioma. Plaintiff asserts that defendants had this knowledge no later than March of 1978.
The alleged fraudulent course of conduct was both affirmative and negative in that it consisted of affirmative misrepresentations about plaintiff’s condition and fraudulent concealment of plaintiff’s actual condition. While it is clear that no affirmative misrepresentations were made by Dr. McMurtry after plaintiff’s last visit to him, the alleged fraudulent concealment continued long after that date.
Concealment, with intent to defraud, of facts which one is duty bound to disclose is of the same legal effect and significance as affirmative misrepresentations. (Quadrozzi Concrete Corp. v Mastroianni, 56 AD2d 353 [2d Dept 1977]; Di Maio v State of New York, 128 Misc 2d 101 [Ct Cl 1985]; Forker v Brown, 10 Misc 161.) Such a fraudulent concealment continues until (1) the victim of the fraud discovers the true facts; (2) the victim ceases to rely upon the fraudulent failure to reveal; or (3) the party engaged in the fraud no longer has a duty to disclose the concealed facts. The moment that any of these events occur, the fraud has terminated and the accrual portion of the Statute of Limitations begins to run.
As noted above, plaintiff, the victim of the alleged fraud, discovered the true facts in December of 1984. There is no question that until that date plaintiff relied upon the fraudulent conduct of defendants, who at all times had a duty to disclose.
*663 There is no merit to Dr. McMurtry’s argument that plaintiffs reliance upon the defendants’ fraudulent concealment ended with the termination of the radiation and chemotherapy treatments. Again, defendant seeks to blend malpractice and fraud concepts without sufficient analysis. The fact that the most damaging type of treatment stopped in 1976 did not end plaintiffs reliance upon defendant’s continuous concealment of the facts. Plaintiff continued to make periodic visits to both doctors, where he was given assurances that the original misdiagnosis was correct and that he was lucky to be alive. After the visits to Drs. McMurtry and Culleton ended, plaintiff continued in the treatment (which was erroneous and harmful) suggested by them with the physician who had assisted them and had now replaced the retiring Dr. Culleton. Defendant McMurtry’s ongoing involvement in plaintiffs case is indicated by Dr. Klass’s November 1983 letter to him and by Dr. McMurtry’s earlier letter to Dr. Culleton. Even if Dr. McMurtry had not remained involved in plaintiffs treatment, his duty to disclose his fraud would nonetheless have continued.
A doctor who fraudulently conceals his patient’s true condition, and knows, or should know, that the patient is relying on the misdiagnosis and failing to get appropriate treatment because of it, cannot absolve himself of his duty to disclose the concealed facts by stopping treatment. As long as the plaintiff continues to rely on the original misrepresentations and/or concealment, the fraud and the doctor’s duty to disclose continue. To hold otherwise would allow a doctor to insulate himself from liability for fraud by terminating treatment. There is no basis in law or logic for such a result.
Accordingly, for accrual purposes, defendants’ fraudulent conduct did not terminate until December 1984, when plaintiff ceased reliance upon defendant’s concealment. At that point plaintiffs fraud cause of action accrued. Since Dr. McMurtry was served within six years of accrual of the cause of action plaintiffs fraud claim against him is timely.
In accordance with the foregoing, defendants’ motion for summary judgment is granted to the extent that plaintiffs causes of action sounding in malpractice against defendant McMurtry are dismissed. Defendants’ motion is in all other respects denied. Pursuant to CPLR 3212 (b) the court searches *664 the record and grants summary judgment in favor to plaintiff dismissing the affirmative defenses asserting the Statute of Limitations and improper service in the answer of defendant Culleton as to all causes of action, and in the answer of defendant McMurtry as to the fraud cause of action.

 It remains "baffling” why the Legislature did not simply choose to amend CPLR 213 (8).