**F. Irvin DYMOND, Plaintiff,**

v.

**NATIONAL BROADCASTING COMPANY, INC., a subsidiary of Radio Corporation of America, and George Schlatter, d/b/a Schlatter Productions, Defendants.**

**Civ. A. No. 82–427.**

United States District Court,
D. Delaware.

March 14, 1983.

Harry H. Rhodes, III, of Brown, Shiels & Chasanov, Dover, Del., for plaintiff; John C. Lowe, of Lowe, Gordon, Jacobs & Snook, Ltd., Charlottesville, Va., of counsel.

William Prickett, and Richard R. Wier, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant, National Broadcasting Co., Inc.

OPINION

CALEB M. WRIGHT, Senior District Judge.

Presently before the Court are the plaintiff's, F. Irvin Dymond, motion to amend his complaint to state a cause of action under Delaware law and the defendant's, National Broadcasting Company (hereinafter "NBC"), motion to dismiss the complaint based on the Louisiana statute of limitations. The facts as presently developed are as follows.

On October 3, 1980, NBC, a Delaware corporation, broadcast the television program "Speak Up America" to a nationwide television audience. The plaintiff claimed that he was slandered when a guest on "Speak Up America" stated that Clay Shaw's attorney had been convicted of perjury.[1] The plaintiff, a lawyer who lives and practices in the State of Louisiana, was Clay Shaw's attorney and rendered and practiced law in that State during the relevant time period.

On October 13, 1981, the plaintiff filed suit in the United States District Court for the Eastern District of Louisiana against NBC and George Schlatter, the producer of "Speak Up America", alleging defamation. When the plaintiff learned that his action

---

**1.** Clay Shaw is a person often accused of being a co-conspirator in the assassination of President Kennedy.

was barred by the one-year Louisiana statute of limitations, he voluntarily nonsuited his Louisiana action on September 28, 1982. On July 7, 1982, the plaintiff filed the same suit in the United States District Court for Delaware. The complaint filed with the Court was identical to the Louisiana complaint and failed to allege a cause of action in Delaware.

On December 14, 1982, the plaintiff filed a motion to amend his complaint to allege that the television program was viewed in Delaware and that the plaintiff's reputation was injured in Delaware. At oral argument on March 4, 1983, the Court, pursuant to Fed.R.Civ.P. 15(a), granted the plaintiff's motion.

Consequently, the Court is left with the defendant NBC's motion to dismiss. NBC alleges that even if the complaint states a Delaware cause of action, Delaware law requires the application of the Louisiana statute of limitations to the present multistate defamation case. Consequently, because the Louisiana statute of limitations is one year, this action also would be barred in Delaware. The plaintiff argues that Delaware law with its two year statute of limitations should apply because the complaint states that the broadcast caused injury to the plaintiff in Delaware. It is the plaintiff's unsupported contention that an allegedly defamed plaintiff may sue in any state in which he has suffered injury and have the law of that state control the substantive aspects of the litigation. The issue for the Court, consequently, is whether it should apply the Delaware two year statute of limitations or the Louisiana one year statute of limitations in a multistate defamation action where the plaintiff lives and works in the State of Louisiana.

A Federal District Court sitting in diversity in Delaware must apply Delaware conflict of law rules in determining what state law will govern. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487,

496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *National Instrument Laboratories, Inc. v. Hycel, Inc.,* 478 F.Supp. 1179, 1181 (D.Del.1979). Traditionally under the common law, statutes of limitations were considered procedural for conflict of law purposes and therefore states generally would apply their own statute of limitations to a dispute arising in another state. *See, Note, The Choice of Law in Multistate Defamation—A Functional Approach,* 77 Harv.L. Rev. 1463, 1482 (1964). More recently, however, most states including Delaware have adopted borrowing statutes which hold generally that a foreign statute of limitations will govern in certain situations. *See, Note, Statute of Limitations: Lex Loci or Lex Fori,* 47 Va.L.Rev. 299, 308 (1961).

Under 10 *Del.C.* § 8121,[2] Delaware has made the policy determination in conflict of law decisions that when a cause of action arises outside of Delaware, and that action would be barred in the state in which it arose because of that state's statute of limitations, the cause of action cannot be brought in Delaware. Consequently, a federal court sitting in diversity must apply the forum state's borrowing statute to a cause of action arising outside the forum state. *See generally Wells v. Simonds Abrasive Co.,* 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211 (1953).

The question that the Court confronts is where does the "cause of action" arise in a multistate defamation action. The courts of Delaware have not been confronted with this question before. Further, while many cases from other jurisdictions analyze choice of law questions in multistate defamation cases, the Court has found no precedent discussing where a "cause of action" arises in a multistate defamation action. The issue the Court must decide is whether the factors used in determining where a "cause

---

**2.** 10 *Del.C.* § 8121 provides in pertinent part: Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such a cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or county where the cause of action arose, for bringing an action upon such cause of action.

of action" arises for purposes of 10 *Del.C.* § 8121 are the same factors a Delaware Court would use in determining which state substantive law would apply in choice of law determinations. An initial question, therefore, is how "cause of action" is defined under 10 *Del.C.* § 8121.

Delaware cases construing the term "cause of action" in 10 *Del.C.* § 8121 are of little help in defining how the courts should determine where a "cause of action" arises in a multistate defamation suit. Generally, the tortious injuries involved in the Delaware cases construing 10 *Del.C.* § 8121 clearly occur in a single state; therefore, the cause of action arises in that state. *See, e.g., Frombach v. Gilbert Associates,* 236 A.2d 363, 365 (Del.1967), *cert. denied,* 391 U.S. 906, 88 S.Ct. 1655, 20 L.Ed.2d 419 (1968) (where tort injury occurred in Pennsylvania, Pennsylvania statute of limitations apply); *Chesapeake Util. Corp. v. Chesapeake and Potomac Telephone Co. of Maryland,* 401 A.2d 101, 104 (Del.Super.Ct. 1979) (because injury occurred in Maryland, Maryland statute of limitations applied). In a multistate defamation case, however, the plaintiff could argue that tortious injury occurs in all fifty states. If the allegedly defamed plaintiff suffered injury in all of the fifty states, the plaintiff arguably could claim that a cause of action arises in every state. Consequently, if a "cause of action" arises wherever the plaintiff suffers injury, Dymond would be able to sue in Delaware to recover for the injuries he has suffered in Delaware. The end result of this definition of "cause of action" would be that this Court would have to apply the libel law of all the states that received NBC's broadcast because a cause of action has arisen in each of these states. *See generally Ettore v. Philco Television Broadcasting Corp.,* 229 F.2d 481 (3d Cir.1956). This is a result which should be avoided. *See Palmisano v. News Syndicate Co., Inc.,* 130 F.Supp. 17, 19 n. 1 (S.D.N.Y.1955).

In order to determine properly how the term "cause of action" should be defined in a multistate defamation suit, it is necessary to uncover the legislative purpose behind the Delaware borrowing statute. Section 8121 was enacted to prevent forum shopping. *See Pack v. Beech Aircraft Corp.,* 132 A.2d 54, 57 (Del.1957). Furthermore, in judicially enacting a similar borrowing policy, the New Jersey Supreme Court in *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412 (1973) also has stated that the purpose of the borrowing rule is to discourage forum shopping litigants with few ties to New Jersey from gaining the benefit of New Jersey's favorable statute of limitations. *Id.* 305 A.2d at 415–18; *see Henry v. Richardson-Merrell, Inc.,* 508 F.2d 28, 32 (3d Cir.1975). The issue the Court confronts is how to best effectuate this policy consideration.

The State of New Jersey has decided that the most efficient way to enforce this policy is to consider a foreign state's statute of limitations part of that state's substantive body of law. *See, e.g., Busik v. Levine,* 63 N.J. 351, 307 A.2d 571, 577–78 (1973); *Breslin v. Liberty Mutual Insurance Co.,* 125 N.J.Super. 320, 310 A.2d 527, 533 (Law Div.1973). The United States Court of Appeals for the Third Circuit in construing New Jersey law has stated the following:

> In determining whether the present cause of action is timebarred, New Jersey choice of law rules therefore require a determination of which law will govern the merits of a case.

*Henry v. Richardson-Merrell, Inc.,* 508 F.2d 28, 32 (3d Cir.1975). Consequently, New Jersey will apply a foreign state's statute of limitations whenever it will apply the foreign state's substantive law to the merits of the case.

The Court believes that the State of Delaware also would apply this method of effectuating its borrowing statute. When the Delaware Legislature enacted 10 *Del.C.* § 8121, it determined that in certain delineated circumstances, a foreign state's statute of limitations would be considered part of that state's substantive body of law. Therefore, similarly to New Jersey, the Delaware courts will apply the foreign state's statute of limitations whenever it would apply the foreign state's substantive law.

Consequently, and solely for the purposes of 10 *Del.C.* § 8121, the Court determines that it will use that body of case law surrounding substantive choice of law determinations in order to determine where the "cause of action" arises in a multistate defamation case.

In determining what law to apply in choice of law situations, Delaware is a *lex loci delecti* jurisdiction, *i.e.,* it will apply the substantive law of the state where the tort or the injury occurred. *See, e.g., Thornton v. Carroll,* 490 F.Supp. 455, 457 (D.Del.1981). Nonetheless, no Delaware court has faced the specific question of what law to apply in a multistate defamation case. In general, other courts have viewed a variety of factors in determining what law to apply to the merits of a particular case. Among the factors courts have considered are: the state of the plaintiff's domicile; the state of the plaintiff's principle activity to which the alleged defamation relates; the state where the plaintiff in fact suffered the greatest harm; the state of the publisher's domicile or incorporation; the state where the defendant's main publishing office is located; the state of principal circulation; the place of emination; the state where the libel was first seen; and the law of the forum. *Rudin v. Dow Jones & Co., Inc.,* 510 F.Supp. 210, 217 (S.D.N.Y.1981) (*citing Palmisano v. New Syndicate Co., Inc.,* 130 F.Supp. 17, 19 n. 2 (S.D.N.Y.1955)). Clearly application of each of these factors to a particular case would be unmanageable. Consequently, courts typically approach this choice of law problem in either of two ways.

The first method of choosing a substantive law is straight forward. In some states such as Kansas, a *lex loci delecti* jurisdiction, the substantive law of the plaintiff's domicile is applied in a multistate defamation case. *Miller v. Lear Siegler, Inc.,* 525 F.Supp. 46, 56 (D.Kan.1981); *cf.,*

*Dale Systems, Inc. v. Time, Inc.,* 116 F.Supp. 527, 531 (D.Conn.1953) (Connecticut applies law of domicile in multistate defamation cases); *Lewis v. Reader's Digest Ass'n,* 512 P.2d 702, 705 (Mont.1973) (Montana applies law of domicile in multistate defamation cases). These jurisdictions consistently apply the law of the plaintiff's domicile without explicit consideration of other factors.

Other jurisdictions apply a more flexible approach which presumes that the law of the plaintiff's domicile is controlling but requires consideration of other factors. For example, in a recent Pennsylvania decision, Judge Lewis Pollak, citing with approval the *Restatement (Second) Conflict of Laws* § 150(a) (1971),[3] stated the following:

> In general, the state of a plaintiff's domicile will be the place where most, if not all, of his or her reputational contacts are found. Accordingly, in the conflict of laws context, the state of the plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name and providing compensation for harm caused by the defamation publication.

*Fitzpatrick v. Milky Way Productions, Inc.,* 537 F.Supp. 165, 171 (E.D.Pa.1982). In an earlier case in the United States District Court for the Southern District of New York, Judge Irving Kaufman implicitly applied the same test in a multistate defamation case. *Palmisano v. News Syndicate Co., Inc.,* 130 F.Supp. 17, 20 (S.D.N.Y.1955). Further, in *Rudin v. Dow Jones & Co., Inc.,* 510 F.Supp. 210 (S.D.N.Y.1981), the court stated that it would normally apply the law of the plaintiff's domicile unless the plaintiff has demonstrated that he has a significant relationship with some other state. *Id.* at 216; *see also Note, The Choice of Law in Multistate Defamation—A Fundamental Approach,* 77 Harv.L.Rev. 1463 (1964), (agreeing with philosophy embodied in *Re-*

---

3. The *Restatement (Second) Conflict of Laws* § 150(2) provides the following:

When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.

Comment (e) states:

When there has been publication in two or more states ... at least most issues involving the tort should be determined ... by the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation.

statement (Second) Conflict of Laws). Therefore, the test enunciated by Judges Pollack and Kaufman and by the Restatement (Second) Conflict of Laws generally will require the application of the law of the plaintiff's domicile unless other factors strongly suggest that the laws of another state are more applicable.[4]

The Court finds that these two approaches are the most widely accepted methods of determining which substantive law to apply to a multistate defamation action. The Court, however, is not required in this instance to determine whether the standard set forth in Miller v. Lear Siegler, Inc., 525 F.Supp. 46 (D.Kan.1981) or the standard embodied in the Restatement (Second) would apply in Delaware because under either approach the Delaware courts would apply the law of Louisiana. Under the first approach, the plaintiff states in his complaint that he is a citizen of Louisiana. Therefore, Louisiana law would apply. Applying the second more flexible approach, the plaintiff states that he is a citizen of Louisiana, that his law practice is centered

in Louisiana, and that the alleged slander arose out of a case in the Louisiana state court system. Further, there is no other state that plaintiff points to that has such a significant relationship with the plaintiff. Therefore, even under the Restatement (Second) analysis, the Court also must apply Louisiana law and its one year statute of limitations to this action.[5]

Consequently, because Delaware would apply Louisiana substantive law to this multistate defamation action, the Court concludes that Delaware also would apply the Louisiana statute of limitations to this action under 10 Del.C. § 8121. Because the action in this Court was initiated well beyond the one year Louisiana statute of limitations period, La.Civ.Code Ann. Arts. 3536, 3537, the defendant's Motion to Dismiss must be granted. An Order will be entered consistent with this Opinion.

4. The plaintiff would have the Court apply an entirely different approach to this conflict of laws question. The plaintiff cites American Radio Stores v. American Radio & Television Stores Corp., 150 A. 180 (Del.Ch.1930), for the proposition that Delaware would apply its own statute of limitations to a multistate defamation case. The plaintiff believes that Delaware law should be used to redress the plaintiff's injuries in all fifty states including Louisiana. First, the Court finds that the American Radio decision has absolutely nothing to do with the question the Court faces. Second, the plaintiff cites to no other case that supports this position and the Court also has been unable to find support for this proposition.

There is, however, support for the proposition that an allegedly defamed plaintiff can maintain an action in any state where he has received reputational injury. See Ettore v. Philco Television Broadcasting Corp., 229 F.2d 481 (3d Cir.1956); Hartmann v. Time, Inc., 166 F.2d 127, 134–35 (3d Cir.1947). Following the logic of these two cases, a judge hearing a multistate defamation case involving a national television program would have to instruct the jury on the law of defamation for all fifty states. Under this approach, the laws of each state where the plaintiff has suffered injury would be used to redress the plaintiff's injury in that state. For example, if the Court were to apply this "place of injury" rationale in this case, Dymond could sue in Delaware to recover

for damages done to his reputation in Delaware because the Delaware statute of limitations is two years. But Dymond could not sue for injury to his reputation in Louisiana because, applying Louisiana law, his action would be barred by the Louisiana statute of limitations. See Hartmann v. Time, Inc., 166 F.2d 127, 134–35 (3d Cir.1947).

The rationale used in this "place of injury" case appear outmoded and would cause great difficulty to a judge trying a multistate libel case. More recent cases and the Restatement (Second) Conflict of Laws has abandoned the "place of injury" concept. See Fitzpatrick v. Milky Way Productions, Inc., 537 F.Supp. 165 (E.D.Pa.1982); Miller v. Lear Siegler, Inc., 525 F.Supp. 46 (D.Kan.1981).

5. Moreover, 10 Del.C. § 8121 was enacted for the purpose of preventing forum shopping. The plaintiff originally filed this lawsuit in the federal court of Louisiana. The only reason the plaintiff now selects this jurisdiction is Delaware's two year statute of limitations. The plaintiff has pointed to no reason why Delaware would have an interest in protecting the plaintiff's rights. This suit is a blatant attempt to forum shop. The Court, consequently, will not stretch the construction of 10 Del.C. § 8121 to allow the plaintiff to gain the benefit of the Delaware statute of limitations.