OPINION OF THE COURT
Harold Baer, Jr., J.
Defendants move, pursuant to CPLR 3211 (a) (5), to dismiss *89 the complaint in this action on the ground that it is barred by the Statute of Limitations. The motion is granted.
Defendants are The Order of Conventual Franciscan Friars of the Roman Catholic Church (the Franciscans), an order of Roman Catholic priests, Father Bruce Ritter, a member of the Franciscans, and Covenant House, a not-for-profit corporation located in New York City. In 1968 Father Ritter founded Covenant House, for which the Franciscans provided funding. The purpose of Covenant House was to offer a home, counseling and a new start for troubled young people who, for a variety of reasons, ended up alone and friendless on the harsh streets of the City. Father Ritter was the president of and the dominant force behind Covenant House until 1990.
The complaint alleges that Father Ritter engaged in sexual activities with boys living at Covenant House from about 1969 until about 1989. In the spring of 1973, plaintiff, who was then 14 years old, became a resident of Covenant House and sought counseling and advice from Father Ritter. The complaint charges that Father Ritter engaged in sexual contact with plaintiff on repeated occasions from about March through May 1973. Plaintiff alleges that as a consequence he has suffered severe psychological and emotional damage. The complaint contains causes of action against Father Ritter for negligence, malpractice as a social worker, breach of fiduciáry duty and fraud and fraudulent concealment, and causes of action for negligence and based upon respondeat superior against the Franciscans and Covenant House.
One obvious problem that arises from the facts alleged in this case concerns the Statute of Limitations. This action was not commenced until 1990, 17 years after the alleged wrongdoing, at which time plaintiff was 31 years old. Aware of this hurdle, the complaint asserts that the sexual contact produced in plaintiff certain psychological coping mechanisms as a result of which plaintiff was unable to perceive "the existence or nature of his psychological and emotional injuries and their connection to the sexual exploitation”. Plaintiff claims that he did not know or have reason to know of his injuries until April 1989.
In addressing the Statute of Limitations question, I assume the truth of the allegations contained in this complaint, as I must. These allegations describe truly horrifying exploitation of the young plaintiff, made all the worse by the fact that Father Ritter is a religious man. I add, though, so that there *90 will be no doubt, that at this stage of the case and for present purposes, I am only assuming the truth of the allegations. It would be improper for this court or anyone else to conclude, prior to discovery of any of the facts and at the farthest remove from trial, that events in fact occurred as plaintiff claims. I deal only with allegations and with whether or not plaintiff may have a chance to prove these allegations in court.
The Statute of Limitations on plaintiff’s causes of action, except for the fraud claim, is three years (CPLR 214). Fraud claims must be brought within six years of the alleged misrepresentations (CPLR 213 [8]), or two years after the injured party learned of the fraud (CPLR 203 [f]), whichever is later. Plaintiff is entitled to a toll for infancy, but that expired in 1977.[1] Thus, barring some unusual theory, the statute expired for all but the fraud claim in 1980, and for that claim in 1983. A court of this State is not empowered to extend the statutory periods out of sympathy for a plaintiff or regret at a possible claim raised too late (CPLR 201).
The Statutes of Limitation are the result of legislative evaluation of a variety of considerations, not all of which are easily reconcilable. On the one hand, there is the need to permit plaintiffs time to reflect, understand and commence litigation. On the other, Statutes of Limitation encourage prompt action by plaintiffs, bar stale claims, reduce the problems of proof that come with the passage of time and inhibit baseless litigation. They are statutes of repose, making clear that the past is truly past and its controversies concluded. (Duffy v Horton Mem. Hosp., 66 NY2d 473, 476-477 [1985].) The Court of Appeals has recognized that the primary consideration behind the Statutes of Limitation is one of fairness to defendants. (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 429 [1969].) With the various statutes the Legislature has made its choices among the competing considerations and the courts must abide by those choices, even if, as happens, there is an occasional injustice done. (Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 302 [1936].)
*91 In general, a cause of action accrues when there is an injury. The statute begins to run from that time even if the victim is ignorant of the existence of the wrong or injury. (Schmidt v Merchants Desp. Transp. Co., supra, 270 NY, at 300; see, e.g., Note, Toward a Time-of-Discovery Rule for the Statute of Limitations in Latent Injury Cases in New York State, 13 Fordham Urban U 113 [1985].)
Plaintiff argues nevertheless that a delayed discovery rule must apply here. Plaintiff emphasizes the special nature of sexual abuse and the psychological processes that it causes. As a defensive response to the trauma of abuse, a child may minimize or repress what happened, while perhaps even blaming himself or herself for what occurred. Plaintiff contends that victims of sexual abuse suffer, as he allegedly did, from posttraumatic stress disorder, with long-delayed psychological damage. Plaintiff contends that it would be unjust to allow the Statute of Limitations to expire before the victim of abuse could realistically be able to become aware of the wrong inflicted.
Plaintiff concedes that no New York case directly supports his argument, but contends that I am free nonetheless to chart a new path and of course urges that I do just that.
In my view, plaintiff understates the obstacle he faces on this point. New York case law makes clear that there is no delayed discovery rule generally available. As Judge McLaughlin puts it, "New York has a long tradition of hostility toward holding the period of limitations in abeyance pending actual discovery of the injury.” (McLaughlin, 1990 Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C214:5, at 522; see, e.g., Goldsmith v Howmedica, Inc., 67 NY2d 120, 123-124 [1986]; Fleishman v Lilly & Co., 62 NY2d 888 [1984], cert denied 469 US 1192 [1985]; Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008 [1981], appeal dismissed and cert denied 456 US 967 [1982]; Thornton v Roosevelt Hosp., 47 NY2d 780 [1979].) In these decisions the Court of Appeals rejected the contention that it is unjust and unfair in toxic tort and similar cases to require that the Statute of Limitations begin running from the time of the invasion of the plaintiff’s body rather than from the later point at which the injury became known to the plaintiff. The court has made it plain that it regards departures from this rule in particular categories of wrong to be a subject for resolution by the Legislature. Thus, for instance, the court in *92 Goldsmith v Howmedica, Inc. (supra, 67 NY2d, at 124) responded to the contention as follows: "The argument is not new. We have carefully considered it on numerous occasions. In each, we weighed the detriments of such a result against the effect of potentially open-ended claims upon the repose of defendants and society, and held that the Statute of Limitations must run from the time of the act until the Legislature decrees otherwise”.
The Legislature has in fact decreed otherwise in particular instances in which a compelling need has been felt, such as toxic tort cases and actions involving Agent Orange. (CPLR 214-a, 214-b, 214-c.) The Legislature has not, however, modified the basic approach of the Court of Appeals to the Statute of Limitations, thus confirming the validity of that approach and confining the discovery rule to the narrow categories carved out. (See, e.g., Goldsmith v Howmedica, Inc., supra, 67 NY2d, at 123; Matter of Steinhardt v Johns-Manville Corp., supra, 54 NY2d, at 1010-1011, n 1.)
One could argue that if the Court of Appeals were to depart from this approach, a toxic tort action presents in two respects a stronger case for doing so than the one before me. It is clear from the nature of a toxic tort that the victim of it would have no reason to know that he or she was being damaged until physical symptoms manifested themselves long after, perhaps decades after, the exposure occurred. In a sex abuse case, on the other hand, some (though, to be sure, not all) victims would likely have an awareness of having undergone the acts, lacking only an appreciation of the damage caused. Also, the plaintiff in the toxic tort case will unquestionably be suffering from a disease, though it may be open to dispute whether the defendant’s activity was the proximate cause of that disease. In the sex abuse case, on the other hand, there will be the causation difficulty and perhaps also a problem created by the less objectively verifiable nature of the damage asserted.
I conclude from all of this that there is no discovery rule in sex abuse cases in this State. Indeed, the thorough and scholarly student article by Carolyn B. Handler upon which plaintiff heavily relies confirms as much, though with evident regret. (Note, Civil Claims of Adults Molested as Children: Maturation of Harm and the Statute of Limitations Hurdle, 15 Fordham Urban LJ 709, 711, n 9, 739-740 [1987] [hereinafter Fordham Note].) "[T]he Court of Appeals has consistently deferred to the legislature by holding that any modification in *93 •the time of injury accrual should be statutory.” (Id., at 739.) In short, the Note advocates the enactment of a statute, which would not be necessary were the law what plaintiff wishes it to be.
Plaintiff also relies upon a number of cases from other jurisdictions.[2] These cases offer some strong arguments in favor of a discovery rule in sexual abuse cases. But the statutory scheme of these jurisdictions is not always comparable to New York’s. (Contrast, Cal Civ Pro Code § 340.1 [d], with CPLR 201.) In any event, these decisions were not issued against a jurisprudential backdrop like that of New York, that is, that of deferring to the Legislature.
Were I a legislator, I might very well vote for a discovery rule for sex abuse actions for the reasons described in the Fordham Note and various cases. (See, e.g., Tyson v Tyson, 107 Wash 2d 72, 727 P2d 226, 230-237 [Pearson, J., dissenting].) But I must acknowledge that there are a number of aspects to this problem that make it complicated for me as a Judge. As the advocates of a discovery rule emphasize, sexual abuse may cause damage long after the incidents, even many years after the end of the infancy toll. Such cases therefore very often will carry with them difficult problems of proof, such as lost witnesses, vanished memories and the like. These cases are inherently very delicate because they depend upon the recollection of incidents that occurred in childhood. A child is more likely to misunderstand events than is an adult and the more distant events are, the less clearly they will be recalled *94 accurately. This is not, of course, to say that very damaging incidents do not occur, but only that the nature of the activity and the stage in a victim’s life at which it occurs make this class of case very different from those involving foreign objects left in the body of a patient, as in Flanagan v Mount Eden Gen. Hosp. (24 NY2d 427, supra), in which the fact of a wrong having occurred is indisputable. "[N]o claim can be made that the patient’s action may be feigned or frivolous * * * [and] there is no possible causal break between the negligence of the doctor or hospital and the patient’s injury.” (Flanagan v Mount Eden Gen. Hosp., 24 NY2d, at 430; see, Tyson v Tyson, supra, 727 P2d, at 227-230.)[3]
Further, plaintiff here suggests that problems of proof are his problem only, but that is not so. These cases are also very different from the normal run of civil suit because of the infamous stigma that attaches to the accused abuser. Wrongs should not go uncorrected, but there is a reason why cases of this nature can be seriously problematic if based upon shaky proof of long-distant events. It may well be, therefore, that if the statute is to be extended, some objective confirmation of a wrong should be required (see, Meiers-Post v Schafer, 170 Mich App 174, 427 NW2d 606), or that some maximum time limit should be imposed upon any toll. Even if the Statute of Limitations needs to be adjusted in some way to favor plaintiffs in sex abuse cases, it is not clear that a discovery rule is the perfect solution. Plaintiff here advocates such a rule, but one court at least, as noted above (at 93, n 2), has found that the discovery rule is not a satisfactory solution for plaintiffs in cases such as this.
Thus, there are many complex and even conflicting considerations to be reflected upon and weighed in the balance, including expert medical and psychological evidence. Following as I must the course set down by the Court of Appeals, I believe it "inappropriate and injudicious to intrude into an area best suited for legislative scrutiny.” (Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008, 1011, supra; see, Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, 218-219, mot to amend remittur granted 12 NY2d 1073, cert denied 374 US 808 [1963].)
At the very least, if a judicial modification of the law is *95 required, a Trial Judge is not the proper person to do it. A Trial Judge may well be required in particular cases to carry the law to points at which it has not yet arrived, or to fill in the interstices left by the rulings of higher courts. But where the courts of this State, especially the highest, have declared with consistency what the law is, it is not the province of the Trial Judge to opt for something different. The changing of set rules is up to the Court of Appeals.
For these reasons, the motion is granted. I reach this conclusion without enthusiasm, aware that the plaintiff asserts that he was the victim of a most grievous wrong. I am, however, compelled to this conclusion by the law as I read it. The plaintiff must seek relief (probably in the form of a discovery rule) from the Legislature or a higher court.

. There is also a toll for insanity (CPLR 208). This toll is available only in instances of true insanity, not of mere psychological confusion or impairment or "post traumatic neurosis.” (McCarthy v Volkswagen of Am., 55 NY2d 543 [1982]; Hoffman v Hoffman, 162 AD2d 249, 250 [1st Dept 1990]; Smith v Smith, 830 F2d 11, 12 [2d Cir 1987].) Even if the toll were applicable here, it runs for a maximum of 10 years. The toll would thus have come to an end in 1983. In fact, plaintiff does not rely upon this toll.

. These cases and others that I have located are: Osland v Osland (442 NW2d 907 [ND 1989]); Evans v Eckelman (216 Cal App 3d 1609, 265 Cal Rptr 605 [1990]); Petersen v Bruen, 106 Nev 271 (792 P2d 18 [1990]); Callahan v State (464 NW2d 268 [Iowa 1990]); Meiers-Post v Schafer (170 Mich App 174, 427 NW2d 606 [1988]); Hammer v Hammer (142 Wis 2d 257, 418 NW2d 23 [1987]); Nicolette v Carey (751 F Supp 695 [WD Mich 1990]); Hildebrand v Hildebrand (736 F Supp 1512 [SD Ind 1990]); Johnson v Johnson (701 F Supp 1363 [ND Ill 1988]). (Compare, E. & D.W. v D.C.H., 231 Mont 481, 754 P2d 817 [1988]; Tyson v Tyson, 107 Wash 2d 72, 727 P2d 226 [1986]; Lindabury v Lindabury, 552 So 2d 1117 [Fla App 1989], cause dismissed 560 So 2d 233 [Fla 1990].) Hammer v Hammer indicates that Wisconsin applies a discovery rule in all tort cases, which is far from the New York rule. (See also, Callahan v State, supra.) Meiers-Post v Schafer held that an insanity toll could be utilized when memory has been repressed and there is objective corroboration of the events (see also, Nicolette v Carey, supra), but New York has clearly rejected such use of the insanity toll. On the other hand, Petersen v Bruen held that the discovery rule was problematic from the victim’s point of view and that no existing statute would bar a sex abuse case.

. It is true, on the other hand, that an infancy toll itself accepts the possibility of problems of proof. (Tyson v Tyson, 107 Wash 2d 72, 727 P2d 226, 232 [Pearson, J., dissenting].)