DAVID B. LILLY COMPANY, INC., a
Delaware corporation, Plaintiff,

v.

G. Robert FISHER, an individual; Smith, Gill, Fisher & Butts, a Missouri professional corporation; and Cadwalader, Wickersham & Taft, a partnership, Defendants.

Civ. A. No. 89–683–JLL.

United States District Court,
D. Delaware.

July 27, 1992.

Victor F. Battaglia and Francis S. Babiarz of Biggs & Battaglia, Wilmington, Del., for plaintiff.

Howard M. Handelman and Phebe S. Young of Bayard, Handelman & Murdoch, Wilmington, Del., for defendants G. Robert Fisher, and Smith, Gill, Fisher & Butts.

Stephen E. Herrmann and Theodosia Price of Richards, Layton & Finger, Wilmington, Del., for defendant Cadwalader, Wickersham & Taft.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

David B. Lilly Company, Inc. ("plaintiff" or "Lilly Co.") filed suit against the law firm Smith, Gill, Fisher and Butts ("SGF & B") and one of the firm's partners, G. Robert Fisher ("Fisher"), alleging malpractice arising from a corporate acquisition. Plaintiff contends that, because of the malpractice, the transaction was improperly structured. As a result, plaintiff allegedly lost a significant government contract and needed to be restructured. (Docket Item ["D.I."] 1 ¶¶ 5, 7–13, 14, 15; 48 ¶¶ 2–4, 9, 12–13, 17–18; 64 ¶¶ 2–4.)

The plaintiff amended the complaint to add a second law firm, Cadwalader, Wickersham & Taft ("CW & T"), as an additional defendant and the Court granted summary judgment in favor of CW & T on the plaintiff's direct claim. (D.I. 79; 80; 81.) The original defendants, Fisher and SGF & B, filed a cross claim against CW & T and this cross claim is presently before the Court on a motion to dismiss.[1] (D.I. 64;

1. The parties' papers include sworn affidavits and materials outside of the pleadings so the

86.) In count I of the cross claim, the original defendants maintain that, if there was any malpractice, it would be attributable to CW & T's active, primary negligence. Accordingly, they request full indemnity or, in the alternative, contribution, from CW & T. (D.I. 64 ¶¶ 12–14.) In count II of the cross claim, the original defendants maintain that CW & T had a duty to exercise reasonable care and competence in the performance of its legal services and that, if there was any negligence, it was a breach of duty by CW & T. (D.I. 64 ¶¶ 19–22.)

For the reasons set forth below, the Court will grant summary judgment in favor of CW & T.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." "A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The appropriate inquiry is whether there is a need for a trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[I]n other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* The mere existence of a scintilla of evidence in support of the non-moving party will not prevent the grant of a mo-

tion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Id.* at 249, 106 S.Ct. at 2510.

## BACKGROUND

David B. Lilly Company, Inc., the predecessor corporation to the plaintiff in the present action, was owned by one shareholder, David B. Lilly, Sr. (D.I. 97 Ex. C–2; 98 A–64.) The corporation was classified as a "small business" by the United States Small Business Administration ("SBA") and this classification permitted it to compete for certain military contracts set aside for small businesses. These government contracts constituted a significant part of its business. (D.I. 48 ¶ 6; 80 at 2–3.)

The Jordan Company ("Jordan"), through John Jordan, David Zalaznick and Jeb Boucher, approached Mr. Lilly to propose the acquisition of his stock. (D.I. 72 A–10; 80 at 4–5; 97 ¶ 2.) The acquisition was to be accomplished by the sale of David B. Lilly, Sr.'s stock to a newly formed Delaware corporation named Lilly Holdings, Inc. Lilly Holdings, Inc. would thereafter be merged into its subsidiary corporation, David B. Lilly Company, Inc., and the subsidiary would be the surviving company. (D.I. 72 A–12, A–13; 80 at 5; 97 ¶ 2, C–1 to 6.)

After negotiations, Mr. Lilly agreed to sell a controlling interest but, due to the importance of the defense contracts, the sale was conditioned upon the maintenance of the company's "small business" classification. (D.I. 48 ¶ 8; 72 A–12; 80 at 4–5; 97 ¶ 5; 98 A–68 to 70, 80–81.) Jordan retained the original defendants to perform the necessary legal services to consummate the acquisition and the original defendants were aware of the condition. (D.I. 48 ¶ 9; 64 ¶ 3; 72 A–16, A–28 to A–30; 74 ¶ 6; 80 at 3; 82 Ex. G; 97 ¶¶ 2, 4–6, 5 A–70, 84.) In fact, the small business status and the then existing corporate operations were the underlying foundation for the entire transaction. (D.I. 72 A–16.)

---

motion to dismiss must be converted to a motion for summary judgment. Fed.R.Civ.P. 12(b); 56(e). All parties have anticipated this

conversion. (D.I. 88; 96; 97; 98; 104.) *See Rose v. Bartle,* 871 F.2d 331, 340 (3d Cir.1989).

While the original defendants possessed knowledge and experience in the corporate acquisition field, they did not have substantial government contracting experience. (D.I. 72 A–15; 97 ¶¶ 1–2; 98 A–91.) They had completed preliminary research into the SBA issue for a previous transaction and, on Jordan's recommendation, they contacted CW & T for assistance with this issue prior to closing on the deal. (D.I. 48 ¶¶ 10–12; 64 ¶¶ 10, 5–6; 72 A–40; 80 at 3, 5; 74 ¶ 3; 97 ¶ 3, Ex. A.) CW & T had represented Jordan as tax counsel on several previous, unrelated matters. (D.I. 74 ¶ 2; 98 A–79, 80.) The plaintiff had never retained CW & T for the Lilly transaction. (D.I. 74 ¶ 7; 80 at 9.)

Defendant Fisher wrote to third-party defendant Feeney at CW & T at the request of David Zalaznick of Jordan. He requested that CW & T examine the SBA issue on "a preliminary basis" and that CW & T contact him to discuss his concerns. (D.I. 74 Ex. A; 97 Ex. A; 98 A–48.) CW & T, Jordan, and the original defendants discussed the SBA issue before the transaction closed, both before and after the signing of the purchase agreement. (D.I. 74 ¶ 8; 80 at 6–7; 97 ¶¶ 11–15; 98 A–7 to A–9, 33, 34, 55 to 61; 104 ¶ 8.) There was one general internal CW & T memorandum concerning the SBA issue after the purchase agreement but before the closing.[2] (D.I. 80 at 5–7; 97 Ex. B; 98 A–50; 104 ¶ 7.) CW & T was not asked to review any documents or to attend the closing. The record does not reflect that CW & T ever invoiced or was paid for any legal services. (D.I. 74 ¶¶ 8–11; 80 at 6–7; 104 ¶¶ 9, 10–12.)

The original defendants structured the transaction, allegedly based on CW & T's advice, to protect the small business status and to maintain the corporation's power, authority, and legal right to continue to engage in its previous business. (D.I. 70 Ex. B; 74 Ex. B; 98 A–91A.) The acquisition went through and the plaintiff continued its business. When the newly structured corporation submitted a bid for a government contract, a competitor challenged plaintiff's small business status. (D.I. 48 ¶¶ 15–16; 72 A–18 to A–22; 80 at 4.) Realizing the flawed corporate structure, plaintiff withdrew the bid, restructured its corporate organization to comply with the small business status regulations, and filed this action for legal malpractice. (D.I. 48 ¶ 16; 72 A–17; 80 at 4.)

## DISCUSSION

### I. *Contribution/Indemnity: Count I*

Count I of the cross claim alleges that, if there was any negligence in rendering advice concerning the restructuring of the plaintiff's capital stock, it was CW & T's negligence. The original defendants argue that, if they are found liable to plaintiff for negligence, their negligence was passive and secondary to the active and primary negligence of CW & T. Therefore, the original defendants request full indemnity or, in the alternative, contribution from CW & T. (D.I. 64 ¶¶ 12–17.) Noting that the basis for count I is tortfeasor liability, CW & T argues that the count must be dismissed because it fails to state a claim for relief. (D.I. 88; 84 at 17–18.) The Court agrees.

■ Although the parties disagree as to which law applies to the present case, there is no difference, as to count I, between the laws of New York, Delaware, or the District of Columbia. In all three jurisdictions, in the absence of a written contract between defendants, the plaintiff must have a valid cause of action against both defendants in order for one defendant to pursue a valid claim for contribution or indemnity against the other defendant. *Rigsby v. Tyre*, 380 A.2d 1371 (Del.Super.1977); *Hood v. McConemy*, 53 F.R.D. 435 (D.Del.1971); *Slater v. Keleket X–Ray Corp.*, 172 F.Supp. 715 (D.D.C.1959), *rev'd sub. nom. on other grounds*, 275 F.2d 167 (D.C.Cir.1960); *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985). The defendants must be deemed to be joint tortfeasors which involves a common liability to

---

2. The memorandum does not specifically name Jordan or Lilly nor does it render an opinion based upon the specific facts of the Lilly transaction.

the initial plaintiff. *See* Restatement (Second) Torts §§ 886A, 886B (1979); R. Mallen & J. Smith, *Legal Malpractice* §§ 7.13, 8.11 (3d ed. 1989 & Supp.1990); Prosser & Keeton, *Hornbook On Torts* §§ 50–51 pp. 339–341 (5th ed. 1984); Black's Law Dictionary 174, 393, 434–35 (5th ed. 1983).

■ The issue of CW & T's liability to the plaintiff has been raised, litigated and decided. The Court found that no attorney-client relationship existed between the plaintiff and CW & T. It further found no fraud, collusion, malicious acts, special circumstances, or sufficient foreseeability that would extend CW & T's liability to the plaintiff. (D.I. 80 at 10, 14.) Pursuant to the opinions and orders of the Court dated December 4, 1991 and March 26, 1992, CW & T was not liable to the plaintiff and the direct claim against CW & T was dismissed. (D.I. 80; 81; 84; 85.) Therefore, as a matter of law, CW & T and the original defendants cannot be joint tortfeasors.

■ The original defendants counter that the orders have "no collateral estoppel effect on the [original] defendants" and contend that the Court's previous orders may be altered at any time. (D.I. 96 at 17.) Without discussion or analysis, the original defendants cite to *Neoplan USA Corp. v. Taylor*, 604 F.Supp. 1540 (D.Del.1985)[3] and to Federal Rule of Civil Procedure 54(b).[4]

In the absence of support for the argument, this Court speculates that the underlying theory is that the previous order is not "final," which precludes the use of the collateral estoppel doctrine, and that the issue should be decided anew.[5] This argument is without merit. The Court's grant of summary judgment was a final ruling and it was promulgated with the intention of putting the matter to rest. *See United States v. United States Smelting Refining & Mining Co*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950) (law of the case is based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter); C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 4478 (West 1981) (general discussion of law of the case doctrine).

■ The original defendants contend that new facts justify revisiting the issue of whether CW & T owed a duty to the plaintiff. They further contend that, should the Court reconsider the issue, the earlier ruling will be vacated and that a finding of common liability will necessarily follow. In other words, the original defendants appear to be improperly making a motion for reargument of a previously decided issue. While the law of the case

---

**3.** As discussed in *Neoplan,* the judicial determination of an issue in a previous action may bind a party who was not a party in the previous action under the doctrine of "issue preclusion," also known as "collateral estoppel." Collateral estoppel precludes relitigation of an issue in a subsequent suit between different parties when three requirements are met: (1) the issue in both actions is identical, (2) the issue was actually raised and fully litigated, and (3) the issue was necessary to the outcome of a valid prior judgment. *Neoplan USA Corp. v. Taylor,* 604 F.Supp. at 1546 (quoting *Chrysler Corp. v. New Castle County,* 464 A.2d 75, 80 (Del.Super.1983)). The doctrine is one of "public policy designed to put an end to litigation once a party has had his day in court and a full opportunity to present his case." *Foltz v. Pullman, Inc.,* 319 A.2d 38, 40 (Del.Super.1974).

**4.** Rule 54(b) provides:

**(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Fed.R.Civ.P. 54(b) (1991).

**5.** The Court assumes that the original defendants are not arguing that they were deprived of a full and fair opportunity to be heard because this argument has no merit. They were aware of the issue, copied on the briefs, and they attended oral argument. (D.I. 54; 72; 73; 79.)

doctrine does not absolutely bar reconsideration of previous decisions, reconsideration is not appropriate here. The Court is not persuaded that the original defendants have any grounds to justify reconsideration.

The original defendants note that David Zalaznick, who was both a member of Jordan and also the president of Lilly Holdings, Inc., knew that CW & T was consulted for advice on the small business issue. (D.I. 96 at 18–9.) But the Court has always known that this individual was involved in the transaction and that he initially recommended consultation with CW & T. (D.I. 80 at 4–6; 84 at 4–7.) Furthermore, the Court has rejected the argument that the merger created an attorney/client relationship between the plaintiff and CW & T. (D.I. 84 at 8–9.) This "fact" is not new and it clearly does not justify reconsideration of the issue.

The original defendants contend that the CW & T attorney in Washington, D.C., who worked with defendant Fisher, knew that Fisher would rely on his advice. (D.I. 96 at 18–9.) The issue presented in count I is whether there was an attorney/client relationship between the *plaintiff* and CW & T and, while the knowledge of CW & T's lawyer in Washington, D.C., may be relevant to the existence of an attorney/client relationship between the original defendants and CW & T, it is not conclusive to the issue presented in count I. The original defendants baldly state that "there can be no question that [CW & T] understood that the investors in Lilly would rely on any advice he gave on the small business issue." They also observe that the CW & T advice was given prior to closing and, from this fact, they argue that "up to [closing, CW & T's advice] was relied upon by the parties in going forward with the transaction." (D.I. 96 at 18–20.)

The Court cannot assume that CW & T gave advice with the understanding that a non-client corporation would rely on it and this conclusory language, without corresponding evidence, does not justify reconsideration. Furthermore, the mere fact that advice was given prior to closing does not establish an attorney/client relationship and the timing of CW & T's involvement was known by the Court before it granted summary judgment. (D.I. 80; 84.) The Court holds that reargument of CW & T's liability to the plaintiff would not alter the ultimate result and that reconsideration of the issue would wastefully repeat arguments already briefed, considered, and decided. *Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D.Del.1990) (court's opinions are not mere first drafts, subject to revision at litigant's pleasure). In the Court's discretion, reconsideration is not compelled by the interests of justice. *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102, 103 (M.D.Pa.1989) (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973)). Therefore, the Court will grant summary judgment in favor of CW & T on count I because it does not state a valid claim for relief.

## II. *Statute Of Limitations: Count II*

Count II of the cross claim asserts that: (1) CW & T rendered advice in connection with the structuring of the acquisition to preserve the plaintiff's small business status and its eligibility for small business set aside contracts, (2) CW & T owed the original defendants a duty to exercise reasonable care and competence when rendering such advice,[6] (3) CW & T rendered legal advice concerning the legal effect such structuring would have on the plaintiff's small business status, (4) CW & T communicated the advice to the original

---

**6.** All three jurisdictions require the same four elements to recover for attorney malpractice: (1) an attorney-client relationship, (2) neglect of reasonable duty to the client, (3) proximate cause, (4) injury. *Pusey v. Reed*, 258 A.2d 460 (Del.Super.1969); *Law Offices of Jerris Leonard, P.C. v. Mideast Systems, Ltd.*, 111 F.R.D. 359 (D.D.C.1986); *Compusort, Inc. v. Goldberg*, 606 F.Supp. 456, 457 (S.D.N.Y.1985); *Sacco v.* *Burke*, 764 F.Supp. 918 (S.D.N.Y.), *aff'd*, 953 F.2d 636 (2d Cir.1991). In the cross claim, the original defendants never specifically allege that an attorney/client relationship existed between themselves and CW & T and, furthermore, they concede that CW & T was retained by or on behalf of Jordan and Lilly Holdings to render advice. (D.I. 64 ¶ 4.) They are seeking recovery under an indirect "foreseeability" theory.

defendants, knowing that the original defendants would rely on such advice, (5) CW & T failed to exercise the reasonable care and competence in rendering advice concerning the restructuring of the capital stock ownership, and (6) the original defendants did so rely on CW & T's legal advice. (D.I. 64 ¶¶ 4–8, 19–22.)

CW & T argues that an attorney/client relationship was not alleged and that, absent such a relationship, it did not owe a duty to the original defendants. (D.I. 80 at 11–15; 84 at 15–17; 88.) *See Compusort, Inc. v. Goldberg,* 606 F.Supp. 456 (S.D.N.Y. 1985) (no negligence without privity). *But see Hodges v. Smith,* 517 A.2d 299, 301 (Del.Supr.1986) (modern trend measures liability by scope of duty owed rather than by artificial concepts of privity). The Court notes that the jurisdictions may differ with respect to whether privity is required and whether liability can be extended to foreseeable third parties. The Court need not make a determination as to the controlling law or the extent to which liability can extend to those not in privity with the lawyer[7] because any action is barred by the statute of limitations.

### A. Conflict of Laws

The parties disagree as to what law controls as to the appropriate statute of limitations. CW & T argues that New York law applies but Fisher and SGF & B argue that Delaware law or, in the alternative, the District of Columbia law applies. (D.I. 88; 96; 103.) Generally, statutes of limitations are deemed to be procedural for conflict of law purposes and the Court would apply its own state's statute of limitations. *Wells v. Simonds Abrasive Co.,* 345 U.S. 514, 517–18, 73 S.Ct. 856, 857–58, 97 L.Ed. 1211 (1953); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). However, Delaware's borrowing statute[8] requires the Court to use the statute of limitations of the foreign state where the cause of action arose if the limitation period is shorter than in Delaware. 10 *Del.C.* § 8121 (1975); *Dymond v. Nat'l Broadcasting Co.,* 559 F.Supp. 734 (D.Del.1983), *Youell v. Maddox,* 692 F.Supp. 343, 355 (D.Del.1988).

Here, the Court need not determine where the cause of action arose because all

---

7. If the issue were not time barred, the Court could not make any determination, as a matter of law, as to whether a relationship existed between CW & T and the original defendants to give rise to a duty of care. Defendant Fisher testified that he intended to "retain," and in fact did "retain," CW & T to render a legal opinion. (D.I. 82 Ex. A.) As evidence he notes the written and telephone communication, the knowledge of CW & T's "retainer" by third parties, and the recommendations, guidelines, and advice given by CW & T. (D.I. 72 A–24, A–25, A–37, A–38; 97 ¶¶ 15–17, 20–21; 98 A–81.) The original defendants were convinced that CW & T was fully aware of all the relevant facts. (D.I. 63 Ex. D at 83.) On the other hand, defendant Feeney testified that CW & T only intended to offer the "benefit of their thoughts" to foster good will with a previous client. From CW & T's perspective, they were merely being "consulted" to give their "preliminary thoughts" with respect to the SBA issue. (D.I. 64; 74 ¶¶ 3–4, 8–11, Ex. A.) CW & T maintains that it did not render an opinion; it was not significantly involved in the transaction; it was not asked to attend the closing; and it was never asked to review a written opinion which incorporated CW & T advice. CW & T also never billed or was paid for these discussions.

CW & T also contends that it was incumbent upon the original defendants to ensure the accuracy of the information laying the foundation for the advice on which they expected to rely. Compliance with the SBA regulations was fact specific, and CW & T argues that the record does not reflect that they were given any documents concerning or a written description of Lilly's corporate operations or structure. (D.I. 63 Ex. D at 55; 98 A–86.) CW & T maintains that they did not discuss details of the structuring plans for the David B. Lilly Co., that they were never asked to review or comment any written opinion, and that the record does not show that the original defendants took any steps to ensure that the alleged "opinion" rendered by CW & T was accurate. (D.I. 74 ¶ 11; 98 A–87 to A–91.) Moreover, CW & T asserts that they were specifically told by their former client, The Jordan Company, by Zalaznick, not to render a written opinion or incur costs and that defendant Fisher never requested a written opinion even though he obtained opinions from other attorneys. (D.I. 63 Ex. D; 74 ¶ 6; 104 ¶ 6.)

8. Because the Court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332, the Court must follow the prevailing Delaware rules to resolve any conflict of law questions. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

three jurisdictions have the same three year limitation period. *N.Y.Civ.Prac.L. & R.* 214(6) (McKinney 1990); 10 *Del.C.* § 8106 (1975); *D.C.Code* § 12–301 (1981). In all three jurisdictions, an action for malpractice accrues on the date of the alleged injury. *Glamm v. Allen*, 57 N.Y.2d 87, 453 N.Y.S.2d 674, 677, 439 N.E.2d 390, 393 (1982); *Pioneer Nat'l Title Ins. Co. v. Child, Inc.*, 401 A.2d 68, 71–72 (Del.1979); *Knight v. Furlow*, 553 A.2d 1232, 1233 (D.C.App.1989). Any injury from CW & T's alleged malpractice accrued at the closing of the deal, when the restructuring became final and when the alleged advice was actually relied upon. Thus, the statute of limitations, if not tolled, would bar any claim brought after January 31, 1987.[9]

### B. Tolling the Statute of Limitations Due to Ignorance

█ Mere ignorance will generally not excuse the plaintiff's inaction in any of the jurisdictions connected to the dispute. *Bassile v. Covenant House*, 152 Misc.2d 88, 575 N.Y.S.2d 233, 235 (1991); *Byers v. Burleson*, 713 F.2d 856, 860 (D.C.Cir.1983); *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 834 (Del.1992). All three jurisdictions carve out exceptions to deal with certain circumstances but, even under the most liberal tolling provisions, ignorance cannot be excused under the facts and circumstances of the present case and the statute of limitations cannot be tolled. Therefore, resolution of whether to use the substantive law of a foreign state is unnecessary because, under the law of all three jurisdictions, summary judgment is appropriate.

### 1. *New York Law*

█ New York, the jurisdiction favored by CW & T, appears to have the most restrictive policy as to tolling the statute of limitations. "New York has a long tradition of hostility toward holding the period of limitations in abeyance pending actual discovery of the injury." *Bassile v. Covenant House*, 575 N.Y.S.2d at 235 (quoting *Practice Commentary* § C214:5 at 522). Departures from this tradition are "subject[s] for resolution by the Legislature." *Id.*

The original defendants have not brought the attention of the Court to an applicable exception for ignorance of a cause of action under New York law and it would not be an appropriate function of this Court to create any such exception. The statute of limitations cannot be tolled under the law of New York, *see Bassile v. Covenant House*, 575 N.Y.S.2d at 234; *Renda v. Frazer*, 100 Misc.2d 511, 419 N.Y.S.2d 857, 860–61 (1979), *aff'd*, 75 A.D.2d 490, 429 N.Y.S.2d 944 (1980), and if the cause of action is deemed to have arisen under New York law, the enforcement of such action would be barred by the New York statute of limitations. Thus, under the Delaware borrowing statute, it is barred under Delaware law as well. 10 § 8121; *Dymond v. Nat'l Broadcasting Co., Inc.*, 559 F.Supp. at 735.

### 2. *Delaware/District of Columbia Law*

█ The original defendants argue that the cause of action arose either in Delaware or the District of Columbia and that the statute of limitations of either jurisdiction should control the Court's analysis. The end result in both jurisdictions is a "discovery" rule, though each jurisdiction has a slightly different analysis,[10] and the

---

9. To summarize the facts pertinent to the applicable statute of limitations, the Court notes that: (1) the acquisition closing occurred on January 31, 1984 (D.I. 80 at 7); (2) the competitor's challenge to the Lilly Co.'s small business status occurred in April of 1989 (D.I. 80 at 3; 98 A–91C); (3) the plaintiff filed the initial complaint against the original defendants on December 18, 1989 (D.I. 1); (4) the plaintiff amended its complaint to include CW & T on January 2, 1992 (D.I. 48); and (5) the original defendants filed their cross-claim against CW & T on April 15, 1992 (D.I. 64).

10. The underlying public policy is the same in both jurisdictions. Because a lawyer is a legal expert, the client is often not able to recognize the malpractice and requiring such a recognition "casts upon [the client] the unfair and impractical burden of either knowing as much about the law as does her attorney or hiring a second attorney to scrutinize the work of the first." *Byers v. Burleson*, 713 F.2d at 860 n. 6 (quoting 26 *Am.U.L.Rev.* 408, 439 (1977)); *Pioneer Nat'l Title Ins. Co. v. Sabo*, 432 F.Supp. 76, 79 (D.Del.1977) (rule is to protect a blamelessly ignorant plaintiff, "particularly where the 'trig-

original defendants argue that they were ignorant of the malpractice until the small business classification was challenged. Thus, under either Delaware or District of Columbia law, the original defendants argue that the action is not time barred.

The District of Columbia imposes an objective "reasonably should have known" requirement. "Where a legal or medical injury is not readily apparent, the District of Columbia courts follow the 'discovery' rule which tolls the running of the statute of limitations until the plaintiff/client discovers or reasonably should have discovered her injury." *Byers v. Burleson*, 713 F.2d at 860. *See also Knight v. Furlow*, 553 A.2d at 1234. To use the discovery rule, the injury could not be discernable by a reasonably diligent plaintiff.

■■■ While Delaware cases generally reject a time of discovery rule, it excepts injuries that are "inherently unknowable." *Hood v. McConemy*, 53 F.R.D. at 445–6 (citing *Layton v. Allen*, 246 A.2d 794 (Del.Super.1968)); *Mastellone v. Argo Oil Corp.*, 82 A.2d 379 (Del.1951). The exception requires: (1) an injury that is "inherently unknowable" and (2) an injury sustained by a "blamelessly ignorant" plaintiff. *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d at 835; *Curran v. Time Ins. Co.*, 644 F.Supp. 967, 972 (D.Del.1986). In other words, Delaware law imposes a similar objective standard of reasonable discovery.

■■■ Here, the original defendants are not "blamelessly ignorant" of an "inherently unknowable" injury and, from the evidence, a jury could not reasonably conclude that a diligent lawyer would not have been aware of the injury at the closing of the Lilly transaction. The original defendants are attorneys licensed by the Missouri Bar with knowledge and experience in the corporate acquisition field.[11] They accepted employment from Jordan to consummate an acquisition, knowing that maintenance of the SBA classification was a condition precedent. The original defendants were obligated to protect their client's interests, to comply with the condition imposed on the consummation of the acquisition, and to ensure that their client was not purchasing a corporation lacking a substantial part of its business due to a structuring defect.

The purchase agreement entitled Jordan, as the buyer, to an opinion from the seller that the corporation could carry on its previous business. (D.I. 97 Ex. C–2.) The record does not reflect, and the original defendants do not contend, that any such opinion was obtained from the seller. There is no written opinion from a lawyer representing David B. Lilly or a confirming letter from SFG & B with respect to any oral opinion on which they could rely. As lawyers for the buyer, the original defendants were obligated either to obtain a written opinion addressing the SBA issue or to waive the buyer's entitlement to such an opinion by taking responsibility for understanding the regulations and the necessary steps for compliance. From the record, the jury could only reasonably conclude that Fisher and SFG & B undertook the responsibility for compliance with the SBA regulations themselves.

The original defendants contend that they were entitled to rely on CW & T's advice, without further research or counsel, even though such advice was not reduced to a formal opinion. But the original defendants do not explain the source of this entitlement. CW & T did not represent the plaintiff nor was any alleged advice rendered on David B. Lilly, Sr.'s behalf. Moreover, the consultation with CW & T consisted of a few telephone conversations, none of which were documented with a confirming letter or memorandum, and CW & T was not billed or compensated for any legal services. Even if defendant Fisher

gering' of the cause of action depends on the action of a third party"); *Isaacson, Stolper & Co. v. Artisan's Savings Bank*, 330 A.2d 130, 133 (Del.Super.1974) (noting inability of a layman to detect a professional's negligence).

**11.** The Court notes that giving the original defendants the benefit of the discovery rule is clearly not mandated by the public policy underlying the rule. The original defendants are not unexperienced laymen and, as discussed *infra*, they are not blamelessly ignorant.

did "retain" CW & T for advice, the evidence shows that SFG & B was still intimately involved in ensuring compliance. The record does not reflect any contemporaneous documentation of the factual information discussed, the advice or opinion given, or an intention to rely upon these discussions without further research or investigation. The lack of a written opinion or documentation coupled with defendant Fisher's previous research on the issue, his understanding of the importance of the SBA classification and his representation of Jordan in the acquisition necessarily leads to the conclusion that the original defendants knew or reasonably should have known if CW & T had committed malpractice.

While not experts at government contracts, the defendants structured the transaction to preserve the SBA classification. No reasonable jury could conclude that defendant Fisher would not have been aware of any alleged malpractice as of the date of closing. As a matter of law, the Court is convinced that the statute of limitations cannot be tolled under the more liberal provisions under the laws the District of Columbia or Delaware. Because the Court finds that the original defendants were not blamelessly ignorant of an inherently unknowable injury, the statute of limitations cannot be tolled under Delaware law. Also, the original defendant should have known about any malpractice by January of 1984 and, if the cause of action is deemed to have arisen under the law of the District of Columbia, the enforcement of such action would be barred by the D.C. statute of limitations. Thus, under the Delaware borrowing statute, it is barred under Delaware law as well. Tit. 10 § 8121; *Dymond v. Nat'l Broadcasting Co.,* 559 F.Supp. at 735. There are no genuine factual issues that can be properly resolved by a finder of fact. The Court finds that there is not enough evidence to enable a jury to reasonably find in favor of the original defendants.

### CONCLUSION

Summary judgment will be granted in favor of CW & T on both counts of the defendants' cross claim. Count I states no claim for relief and count II is barred by the applicable statute of limitations. An order will be entered in accordance with this memorandum opinion.